1
2
3                          UNITED STATES DISTRICT COURT

4                                  DISTRICT OF NEVADA

5                                         * * *

6    SANJIV N. DAVESHWAR,                      Case No. 3:20-cv-00612-MMD-CLB

7                              Petitioner,                ORDER

8          v.

     GARRETT, et al.,
9
                             Respondents.
10

11   **I.      SUMMARY**

12         Petitioner Sanjiv N. Daveshwar filed a petition for writ of habeas corpus under 28

13   U.S.C. § 2254 (ECF Nos. 7, 22 ("Petition")).[1] Daveshwar pleaded guilty in Washoe

14   County, Nevada, to one count of attempted lewdness with a child under the age of 14,

15   and the state district court sentenced him to imprisonment for four to 15 years. (ECF Nos.

16   11-14, 11-21.) In the remaining grounds of his Petition,[2] Daveshwar seeks habeas relief

17   based on claims of ineffective assistance of trial counsel. For the reasons discussed

18   below, the Court will deny the Petition and deny a Certificate of Appealability ("COA").

19   **II.     BACKGROUND[3]**

20         On December 28, 2017, Mark Bell reported to police that Daveshwar had molested

21

22         [1]The Court granted Daveshwar's motion to supplement Ground 3 and ordered "the
     operative petition is comprised of both ECF Nos. 7 and 22." (ECF No. 28 at 6.)
23
           [2]The Court determined Grounds 2(B), 2(C), 4(A), 4(B), and 4(E) are unexhausted.
24   (ECF No. 28 at 3-5.) The Court granted Daveshwar's motion to dismiss his unexhausted
     claims so he could proceed on his exhausted claims. (ECF No. 21; ECF No. 28 at 5.)
25
           [3]The Court summarizes the relevant state court record for consideration of the
26   issues in the case. The Court makes no credibility findings or other factual findings
     regarding the truth or falsity of evidence or statements of fact in the state court. The Court
27   summarizes the same solely as background to the issues presented in this case. No
     assertion of fact made in describing statements, testimony, or other evidence in the state
28   court constitutes a finding by this Court. Any absence of mention of a specific piece of
     evidence or category of evidence does not signify the Court overlooked the evidence in
     considering the claims.

his 13-year-old-daughter, L.B.[4] (ECF No. 15-2 at 6.) L.B. told police that on the night of December 23, 2017, she and two girlfriends snuck out of their houses to attend a party. (*Id.*) L.B. knew Daveshwar because he was the boyfriend of another girlfriend's mother. (*Id.*) L.B. contacted Daveshwar to pick them up from the party, which he did, and then he drove them to the drive-through lane of a fast-food restaurant. (*Id.*) L.B. was in the front passenger seat while her two girlfriends were in the back seat. (*Id.*) L.B. told police that while they were in the drive-through lane, Daveshwar placed his hand under the top portion of her leggings and touched the upper part of her vagina. (*Id.*) She reported that as they left the drive-through, he placed his hand under her leggings and digitally penetrated her vagina. (*Id.*) She said that after they left the restaurant, he touched her breasts, over and under her shirt, multiple times. (*Id.*) One of the girlfriends who was in Daveshwar's backseat during the alleged acts reported she saw Daveshwar touch L.B.'s leg and breasts over and under her clothing while they were in his vehicle. (*Id.*) The witness reported L.B. showed her a message that L.B. wrote on her telephone asking her to tell Daveshwar to stop touching her. (*Id.*) The witness told Daveshwar to keep his hands on the car wheel and he complied. (*Id.*) A physical examination of L.B. produced "unremarkable results." (*Id.*) Police discovered four outgoing telephone calls made from L.B.'s telephone to Daveshwar's telephone on December 23, 2017, between 1:57 a.m. and 2:13 a.m. (*Id.*) Detectives attempted to contact Daveshwar and learned he flew to India on December 31, 2017. (*Id.* at 6-7.)

A complaint charged Daveshwar with three felonies: (1) sexual assault against a child under 14, punishable by imprisonment for 35 years to life; and (2) two counts of lewdness with a child under 14, punishable by imprisonment for 10 years to life.[5] (ECF

---

[4]The Local Rules of Practice state, "parties must refrain from including—or must partially redact, where inclusion is necessary—[certain] personal-data identifiers from all documents filed with the court, including exhibits, whether filed electronically or in paper, unless the court orders otherwise." LR IA 6-1(a). This includes the names of minor children. Thus, the Court uses only a child's initials. *Id.* A witness referred to herein as "L.B." was a minor at the time of the offenses.

[5]*See* NRS §§ 200.366(1)(b) and 200.366(3)(c), *as amended by* Laws 2015, c. 399, § 8, eff. Oct. 1, 2015; NRS § 201.230(2).

1    No. 11-4 at 8-10.) Police arrested Daveshwar upon his return from India in February 2018.

2    (ECF No. 15-2 at 7.) A March 21, 2018, Pretrial Services Assessment Report states,

3    although Daveshwar "scores as a lower risk on the NPRA (Nevada Pre-trial Risk

4    Assessment)," the score was "overridden in consideration of his prior criminal history."[6]

5    (ECF No. 15-1.) In state justice court proceedings held on March 23, 2018, Daveshwar

6    waived a preliminary hearing and was bound over on the charges. (ECF No. 11-4 at 4-5,

7    11.) At the hearing, Daveshwar agreed to plead guilty to one count of attempted lewdness

8    with a child under 14 on the condition the state would recommend no more than four to

9    15 years imprisonment and Daveshwar could request two to five years imprisonment, but

10   not probation. (ECF No. 11-4 at 5; ECF No. 11-10 at 3.) In an April 4, 2018 opposition to

11   Daveshwar's motion for bail reduction, the state indicated L.B.'s father, Bell, had provided

12   a statement that Daveshwar contacted him to apologize for his actions and asked for

13   forgiveness stating he was drunk when L.B. called him "several times crying at 2:30 a.m."

14   because she and her friends were at a party with boys. (ECF No. 11-12 at 4.)

15          On April 23, 2018, Daveshwar pleaded guilty to a single-count information charging

16   him with attempted lewdness of a child under 14. (ECF No. 11-13.) Daveshwar confirmed

17

18          [6]Because the facts concerning the prior sexual offenses and the basis for
     overturning those convictions is relevant to the issues presented, the Court takes judicial
19   notice of the online docket records of the Supreme Court of Nevada in Case No. 50051,
     which may be accessed by the public online at 50051: Case View (nvsupremecourt.us).
20   According to the records in that docket, a jury convicted Daveshwar on two counts of
     sexual assault and the court sentenced him to 10 years to life for digitally penetrating
21   women while acting as a massage therapist at a Burning Man festival. The Supreme
     Court of Nevada overturned the convictions on appeal. According to the order reversing
22   the convictions, Daveshwar's theory was consent and one of the state's trial theories was
     that, although Daveshwar's application for employment at the Burning Man massage tent
23   stated he had three years of experience as a massage therapist but no certification, he
     was guilty of sexual assault because he violated a code prohibiting certified massage
24   therapists from having sexual relations with or failing to disclose the details of their
     anticipated treatment to a massage client. The Supreme Court of Nevada reversed the
25   convictions holding the code irrelevant as Daveshwar represented in his application that
     he was not a certified massage therapist and the code was not enforced for massage
26   therapists in Nevada at that time. The court held evidence supporting the argument that
     Daveshwar was guilty based on violating the code's prohibition was prejudicial error. In
27   lieu of retrial, Daveshwar pleaded guilty to: (1) coercion (with the use of force or immediate
     threat of force and sexually motivated); and (2) commission of a sexual act in public. (ECF
28   No. 15-2 at 5.) The court sentenced Daveshwar to probation, and he received an
     honorable discharge in December of 2013. (Id.)

he read, understood, and signed the written Plea Memorandum submitted to the court, memorializing the terms of his plea agreement. (ECF No. 11-13 at 3-11; ECF No. 11-14.) In the memorandum, Daveshwar confirmed he understood the elements of the offense the state was required to prove beyond a reasonable doubt, and by pleading guilty, he waived his constitutional rights, and admitted "the facts which support all the elements of the offense(s)" and agreed "the [s]tate possesses sufficient evidence which would result in [his] conviction." (ECF No. 11-14 at 3.) In the memorandum, Daveshwar confirmed he "considered and discussed all possible defenses and defense strategies," "discussed the charges, the facts and the possible defenses," and his attorney carefully explained to him the "possible penalties, and consequences." (*Id.* at 3-6.) He confirmed he understood "[he] will be required to be on lifetime supervision pursuant to NRS 176.0931." (*Id.*) In the memorandum, Daveshwar confirmed his attorney did not promise him anything not mentioned in that memorandum:

> My attorney has not promised me anything not mentioned in this plea memorandum, and, in particular, my attorney has not promised that I will get any specific sentence. I am satisfied with my counsel's advice and representation leading to this resolution of my case. I am aware that if I am not satisfied with my counsel I should advise the Court at this time. I believe that entering my plea is in my best interest and that going to trial is not in my best interest.
>
> . . . .
>
> I offer my plea freely, voluntarily, knowingly and with full understanding of all matters set forth in the Information and in this Plea Memorandum. I have read this [P]lea [M]emorandum completely and I understand everything contained within it.
>
> [M]y plea of guilty is voluntary and is not the result of any threats, coercion or promises of leniency.
>
> [I] am signing this Plea Memorandum voluntarily with advice of counsel, under no duress, coercion, or promises of leniency.

(*Id.* at 6.)

In open court, Daveshwar waived his constitutional rights and pleaded guilty. (ECF No. 11-13 at 4-11.) During the plea colloquy, Daveshwar confirmed he had sufficient time to discuss his case with counsel and no one made any promises to persuade him to plead guilty. (*Id.* at 5-7.) He confirmed he understood the state would recommend four to 15

4

years imprisonment, which, if accepted by the court, meant Daveshwar would "be going to Parole Board at end of four years." (*Id*. at 8-9.) Daveshwar admitted the factual basis and elements of the crime to which he pleaded guilty:

> THE COURT: [W]hat are the elements of the charge, please, that Mr. Daveshwar is pleading guilty to this morning?
>
> [THE STATE]: [S]hould the matter have proceeded to trial in front of a jury, the State would have been prepared to prove beyond a reasonable doubt the felony offense of attempted lewdness with a child under the age of 14 by the following elements: that the defendant did, on or about December 23rd, 2017, in the County of Washoe, State of Nevada, willfully, unlawfully and lewdly attempt to commit a lewd or lascivious act upon or with the body of [L.B.], a female under the age of 14 years at the time that said act was committed, in that the defendant attempted to touch [L.B.] on or about her vaginal area, with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires of himself or of [L.B.], at or near the Jack in the Box . . . within Washoe County, Nevada.
>
> THE COURT: Thank you. Mr. Daveshwar, did you hear that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you commit that crime?
>
> THE DEFENDANT: Yes.
>
> THE COURT: How do you plead to it: Guilty or not guilty?
>
> THE DEFENDANT: Guilty

(*Id.* at 9-11.) The state district court accepted the guilty plea, finding Daveshwar was competent, understood the elements of the offense and the consequences of the guilty plea, including possible minimum and maximum punishments, and the plea was knowing, voluntary, and intelligent. (*Id.* at 5-11.) Trial counsel requested a psychosexual evaluation even though probation was not an option under the agreement. (*Id.* at 12.)

Four days later, on April 27, 2018, Daveshwar signed his handwritten statement concerning the offenses in which he apologized to the Bell family, stated he was "very sorry and shameful" for his crime, and he was "taking responsibility so that [L.B.] and her friends would not have to testify and be traumatized." (ECF No. 15-4.) Daveshwar said L.B. sent him many text messages, before and after the night of the offenses, asking him to give her "cigarettes/nicotine juice." (*Id.*) He said, L.B.'s text messages "jovially talked

about becom[ing] [a] prostitute as prostitute[s] make [a]lot of money." (*Id.*) He said he was sober during those text conversations and did not buy her cigarettes or nicotine juice and dissuaded her from becoming a prostitute. (*Id.*) Daveshwar said he was heavily drinking alcohol on the night of the offenses as he was grieving the death of his father (who died a few months before the offenses),[7] and had already obtained a VISA to fly to India to comfort his mother. (*Id.*) Daveshwar said he received eight telephone calls from L.B. and her friends on the night he picked them up. (*Id.*) He initially told them he could not give them a ride as his stepdaughter was not with them and he was impaired. (*Id.*) He said L.B. contacted him on FaceTime begging him to pick them up because they were cold, snuck out of the house to see boys in a hot tub, and L.B.'s father was expected home at 4:00 a.m. (*Id.*) Daveshwar said he picked them up and his "senses were compromised due to alcohol hallucination." (*Id.*)

A June 1, 2018 Psychosexual Risk Assessment Forensic Examination report stated Daveshwar reported he was 52 years old, had known L.B. for six weeks, and he rubbed L.B.'s thighs and touched her genitalia. (ECF No. 15-3 at 4.) The report also summarized Daveshwar's criminal history. (*Id.* at 5.) The report stated Daveshwar "indicated that even though his agreement with the District Attorneys is that he will be sentenced to a period of incarceration, he requested a psychosexual evaluation to increase his understanding and make changes in his behavior." (*Id.* at 4.) The evaluator concluded Daveshwar does not pose a "high risk for reoffense based on current acceptable standards of assessment." (*Id.* at 8.) However, the evaluator opined that Daveshwar's prognosis was "poor" and, among other things, it was recommended he participate "in an intensive outpatient sex offender treatment that is empirically based," not mere psychotherapy, and "strongly recommended that he be placed under close supervision if he is released from incarceration," and "at no point in time should [he] have

---

[7]Daveshwar told the psychosexual evaluator that his father died a few months before the offenses. (ECF No. 15-3 at 4.)

1   children in his residence as he was extremely "guarded" talking about his sexual interests

2   in children and adolescents. (*Id.* at 8-9.)

3       A June 2018 Pre-Sentence Investigative Report ("PIR") recommended a sentence

4   of three to 10 years imprisonment and stated, "pursuant to NRS 176.0931, the Court must

5   order that a special sentence of lifetime supervision commence after any period of

6   probation, or any term of imprisonment, or after any period of release on parole." (ECF

7   No. 15-2 at 8.) The PIR summarized Daveshwar's criminal history and stated Daveshwar

8   reported feeling bad about the instant offense and understood his activity will have a

9   lasting impact for L.B. (*Id.* at 5, 7.)

10      L.B.'s father, Bell, provided the sentencing court with a June 29, 2018 letter stating

11  his belief that "supervised release on probation would be appropriate" and "with proper

12  supervision, Mr. Daveshwar should return to an active role in society." (ECF No. 15-5 at

13  3.) Bell's letter stated he could "not imagine a person violating a child the way [Daveshwar]

14  did." (*Id.*) Bell acknowledged the incident would not have occurred if his daughter and her

15  friends had not snuck out of the house and called Daveshwar for a ride home. (*Id.*)

16      At sentencing on July 2, 2018, trial counsel confirmed Daveshwar received a copy

17  of the PIR, and requested entry of the psychosocial assessment, PIR, letters, and

18  Daveshwar's statement into the record. (ECF No. 11-20 at 4-6.)  The sentencing court

19  confirmed it reviewed all of the submitted documents and letters and "carefully" reviewed

20  Bell's letter. (*Id.*) Trial counsel requested a sentence of two to five years and confirmed

21  Daveshwar "will be subject to lifetime supervision as a result of the conviction in this case,"

22  and Daveshwar "understands that there will be limitations on his freedom based upon

23  that and he's accepting of that." (*Id.* at 7, 11-12.) Counsel argued Daveshwar previously

24  gave rides to his girlfriend's daughter, that L.B. and her friends contacted Daveshwar

25  requesting a ride four times between 1:56 a.m. and 2:13 a.m., and although Daveshwar

26  told them, "Hey, I'm not going to come and pick you up," they insisted he pick them up

27  saying, "We don't have anyone else to call. We need your help. It's cold out here." (*Id.* at

28  9-11.) The sentencing court interjected the calls and messages were "meaningless" as

1   they did not contain requests to be "sexually molested." (*Id.*) Counsel explained the calls
2   and messages demonstrate Daveshwar did not deliberately seek L.B. on the night of the
3   offense. (*Id.*) The state requested a sentence of four to 15 years contending Daveshwar
4   did not take 100% responsibility for his actions, his criminal history included the same
5   behavior although the facts were different, and the offense against L.B. was "predatory in
6   nature" as he knew the girls had been drinking, and the state believed Daveshwar had
7   "groomed" the relationship with L.B. (*Id.* at 15-19.) The sentencing court provided
8   Daveshwar at least two opportunities to tell the court "anything" before it imposed the
9   sentence. (*Id.* at 21-22, 26.) Daveshwar stated he was "[s]orry for the shameful conduct
10  on the morning of December 23" and blamed it on his intoxication and coping with the
11  death of his father. (*Id.*) He additionally stated, "Yes, I committed the crime," "It's not her
12  mistake. I'm an adult. I'm 52 years old, it's my mistake," and "Yes, what I did was horrible,
13  there's nothing else could have been worse as far as expectations from a 13-year-old
14  child is concerned. Children are precious assets. I broke their trust." (*Id.* at 22-23, 25.)
15  The court sentenced Daveshwar to four to 15 years imprisonment. (*Id.* at 26-27.)

16          Daveshwar's *pro se* appeal of his convictions was dismissed as untimely. (ECF
17  No. 11-30.) The state district court denied without prejudice Daveshwar's requests for
18  appointment of counsel for his postconviction review proceedings because he had not yet
19  filed a petition when he moved for appointment of counsel. (ECF No. 11-38 at 4; ECF No.
20  11-41 at 4.) Daveshwar subsequently filed a state postconviction review petition, and the
21  state district court denied it without appointing counsel, conducting an evidentiary hearing,
22  or receiving a response from the state. (ECF No. 12-3.) Daveshwar appealed *pro se*, and
23  the state supreme court affirmed the denial of his petition upon complete review of the
24  record without a response from the state. (ECF Nos. 12-7, 12-8, 12-11.)

25  **III.    LEGAL STANDARDS**

26          **A.    Antiterrorism and Effective Death Penalty Act**

27          The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the legal
28  standards for consideration of the Petition:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court's decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . [rather] [t]he state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10, 412) (internal citation omitted).

The Supreme Court has instructed that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen*

9

1   *v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult-to-meet"

2   and "highly deferential standard for evaluating state-court rulings, which demands state-

3   court decisions be given the benefit of the doubt.") (internal quotation marks and citations

4   omitted). A state court is not required to cite Supreme Court cases or even be aware of

5   them "so long as neither the reasoning nor the result of the state-court decision

6   contradicts them." *Early v. Packer*, 357 U.S. 3, 8 (2002). The petitioner carries the burden

7   of proof. *See Pinholster*, 563 U.S. at 181 (citing *Woodford v. Visciotti*, 537 U.S. 19, 25

8   (2002)). Where the state court has denied a federal constitutional claim on the merits

9   without explanation, this Court "determine[s] what arguments or theories supported or . .

10  . could have supported, the state court's decision" and then considers "whether it is

11  possible fairminded jurists could disagree that those arguments or theories are

12  inconsistent with the holding in a prior decision of [the United States Supreme]

13  Court." *Richter*, 562 U.S. at 102.

14      Where there is no clearly established federal law, *i.e.*, no holding from the Supreme

15  Court, stating a particular standard or rule at the time of the state court decision, then, by

16  definition, a petitioner cannot establish under AEDPA that the state court's decision was

17  either contrary to or an unreasonable application of clearly established federal law. *See,*

18  *e.g.*, *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see also Williams*, 529 U.S. at 412

19  (interpreting "the meaning of the phrase 'clearly established Federal law, as determined

20  by the Supreme Court of the United States'" contained in 28 U.S.C. § 2254(d)(1) as

21  referring to "the holdings, as opposed to the *dicta*, of the [Supreme] Court's decisions as

22  of the time of the relevant state-court decision") (emphasis in original).

23      **B.   Ineffective Assistance of Counsel**

24      A petitioner claiming ineffective assistance of counsel must demonstrate: (1) the

25  attorney's "representation fell below an objective standard of reasonableness[;]" and (2)

26  the attorney's deficient performance prejudiced the petitioner such that "there is a

27  reasonable probability that, but for counsel's unprofessional errors, the result of the

28  proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88,

694 (1984). A court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy either question, the Court need not consider the other. *Id.* at 697.

"The Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 24 (2013). In considering an ineffective assistance of counsel claim, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A petitioner making an ineffective assistance of counsel claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. In considering such claims, a court is obligated to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* Strategic choices made "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91. On the other hand, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* On the performance prong, the issue is not what counsel might have done differently but whether counsel's decisions were reasonable from his or her perspective at the time. *Id.* at 689-90. It is a petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. To establish prejudice, it is not enough for the petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" as "the standards created by *Strickland* and § 2254(d) are both 'highly deferential,'" and applied in tandem, "review is 'doubly so.'" *See Richter*, 562 U.S. at 105 (internal citations omitted); *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply;

hence, the Supreme Court's description of the standard as 'doubly deferential.'") (citing *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003)). A federal court may grant relief to a state prisoner on a claim of ineffective assistance of counsel "only if every 'fairminded juris[t] would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (emphasis in original) (quoting *Richter*, 562 U.S. at 101).

The Supreme Court, applying *Strickland* to counsel's advice in plea negotiations, has held the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To demonstrate prejudice, a petitioner must show there was a "reasonable probability" that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.* at 58-59. "Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59. That assessment will depend on a prediction whether the evidence would have changed the outcome of a trial. *Id.* (holding petitioner failed to allege he would not have pleaded guilty and insisted on going to trial had counsel accurately informed him of his parole eligibility date).

## IV.   DISCUSSION

The remaining grounds of the Petition allege trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments. (ECF Nos. 7, 22.)

### A.   Ground 1—Investigation of Texts and Witnesses

Ground 1 alleges trial counsel was ineffective in failing to adequately investigate text messages and interview L.B. and her friends before advising Daveshwar to plead guilty. (ECF No. 7 at 4-6.) Daveshwar claims the texts and interviews with the victim and

1  her friends would have revealed exculpatory or impeaching evidence exposing L.B's

2  motivation for making false accusations against him. (*Id.*)

3       The Supreme Court of Nevada determined Daveshwar failed to establish deficient

4  performance or prejudice under *Strickland*:

> Appellant argues that he received ineffective assistance of counsel. To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). To demonstrate prejudice regarding the decision to enter a guilty plea, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996). Both components of the inquiry must be shown. *Strickland*, 466 U.S. at 697. We give deference to the court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).
>
> [A]ppellant claimed that counsel did not adequately investigate before advising him to plead guilty. He asserted that had counsel investigated, he would have discovered demanding and threatening text messages from the victim. Appellant did not demonstrate deficient performance or prejudice where the record indicates that the text messages were not clearly exculpatory and some even supported the allegations against appellant. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (recognizing that petitioner must identify what a better investigation would have revealed). Therefore, the district court did not err in this claim.

20  (ECF No. 12-11 at 2-3.) The Supreme Court of Nevada's determination is neither contrary

21  to nor constitutes an unreasonable application of federal law as determined by the

22  Supreme Court and is not based on an unreasonable determination of the facts in the

23  state court record.

24       Before his agreement to plead guilty, the complaint charged Daveshwar with

25  sexual assault on a child under 14. (ECF No. 11-4 at 8-10.) A person is "guilty of sexual

26  assault if he or she . . . commits a sexual penetration upon a child under the age of 14

27  years . . . ." NRS § 200.366(1)(b), *as amended by* Laws 2015, c. 399, § 8, eff. Oct. 1,

28  2015. "Sexual penetration" is defined, in relevant part as "any intrusion, however slight,

of any part of a person's body . . . ." NRS § 200.364(9), *as amended by* Laws 2017, c. 375, § 2, eff. Oct. 1, 2017; Laws 2017, c. 431, § 2, eff. Oct. 1, 2017. "Sexual assault is a general intent crime." *Honeycutt v. State*, 118 Nev. 660, 670 n.24 (2002), *overruled on other grounds by Carter v. State,* 121 Nev. 759 (2005). The complaint additionally charged Daveshwar with two counts of lewdness with a child under 14. (ECF No. 11-4 at 8-10.) A person is "guilty of lewdness with a child" if he or she was "18 years of age or older and willfully and lewdly" committed "any lewd or lascivious act, other than acts constituting the crime of sexual assault, upon or with the body, or any part or member thereof, of a child" under the age of 14 years, "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of that child . . . ." NRS § 201.230(1)(a) and (2). In Nevada, "'[l]ewd' has an ordinary, well-established definition: (1) 'pertaining to sexual conduct that is obscene or indecent; tending to moral impurity or wantonness,' (2) 'evil, wicked or sexually unchaste or licentious,' and (3) 'preoccupied with sex and sexual desire; lustful.'" *Shue v. State*, 133 Nev. 798, 808 (2017) (citation omitted). Lewdness with a child under the age of 16 is a specific-intent crime. *State v. Catanio,* 120 Nev. 1030, 1036 (2004) (stating "the Nevada statutory language providing that a lewd act be done 'upon or with' a child's body clearly requires specific intent by the perpetrator to encourage or compel a lewd act in order to gratify the accused's sexual desires").

The Supreme Court of Nevada's application of *Strickland* and determination that counsel's failure to investigate did not constitute performance below the range of competence demanded of attorneys in criminal cases is objectively reasonable. L.B. was 13 years old and reported that 52-year-old Daveshwar touched her vagina and breasts and digitally penetrated her vagina. One of L.B.'s girlfriends witnessed Daveshwar touching L.B.'s leg and breast, and at L.B.'s request, she asked Daveshwar to stop touching L.B. An objectively reasonable attorney could conclude investigation of the alleged text messages and witness statements concerning L.B.'s previous demands for cigarettes and nicotine juice and unspecified threats was unnecessary because such text

14

messages and related interviews would not disprove the elements of any of the charges or establish a defense. An objectively reasonable attorney could moreover conclude the alleged content of the text messages and interviews promised a low probability of impeaching the witnesses in light of Daveshwar's criminal history, which was conceivably admissible at trial and involved the same conduct; namely, Daveshwar previously digitally penetrated females without their consent while he was in a position of trust under circumstances where he allegedly provided them a service. *See* Ground 4(C). Even if the text messages and interviews revealed L.B. and her friends had motives to fabricate the charges, an objectively reasonable attorney could conclude such impeachment evidence was unlikely to persuade a jury the corroborated accusations about Daveshwar's actions toward L.B. were false. Finally, an objectively reasonable attorney could conclude investigation of messages and interviews was unnecessary because the existence of 100 text messages between 52-year-old Daveshwar and 13-year-old L.B., about cigarettes, nicotine juice, and her interest in prostitution, during a six-week period after they met, supported the charges by supporting the state's theory that Daveshwar had been "grooming" his relationship with L.B. for sexual abuse.

The Supreme Court of Nevada's determination that Daveshwar failed to establish prejudice under *Strickland* is also objectively reasonable. Before entering into the plea agreement, Daveshwar faced imprisonment for 35 years to life for the charge of sexual assault of a child under 14 and imprisonment for 10 years to life for two additional counts of lewdness with a child under 14. *See supra*, p. 2. The statements of L.B. and the eyewitness supported those charges. As discussed, an objectively reasonable attorney could conclude there was little or no possibility the text messages and statements of L.B. and her friends would provide a defense or sufficiently undermine the credibility of the witnesses to convince a jury that L.B. fabricated any of her accusations. Under these circumstances, counsel's advice to plead guilty to a single charge for attempted lewdness with a child under 14 was favorable as the state promised to recommend imprisonment for four to 15 years and the maximum sentence was eight to 20 years. Compared with

1    the risk of conviction for the three charges in the complaint, carrying sentences of 10

2    years to life and 35 years to life imprisonment, the plea bargain offered a drastic reduction

3    in Daveshwar's prospective length of imprisonment and time he must serve before

4    seeking parole. Based on this record, it is objectively reasonable for the state supreme

5    court to conclude Daveshwar failed to establish that, but for counsel's failure to

6    investigate, counsel would have altered the advice about accepting the plea offer or that,

7    but for counsel's failure to investigate, Daveshwar would have insisted on trial rather than

8    accept the plea offer.

9        For the foregoing reasons, Daveshwar has no entitlement to relief for Ground 1.

10   **B.    Ground 2(A)—Police Report and Discussions with Bell**

11       Ground 2(A) alleges trial counsel was ineffective in failing to disclose to Daveshwar

12   the contents of the police report and inform him about discussions between the prosecutor

13   and Bell before Daveshwar waived preliminary hearing and pleaded guilty. (ECF No. 7 at

14   7-11.) The Supreme Court of Nevada determined Daveshwar failed to establish deficient

15   performance or prejudice under *Strickland*:

16       [A]ppellant claimed that counsel did not provide him with a copy of
         the police report or inform him about discussions with the prosecutor and
17       victim's father before he waived the preliminary hearing and pleaded guilty.
         He asserted that he forfeited the opportunity to determine how "hostile" the
18       adversarial parties and witnesses were. Appellant did not demonstrate
         deficient performance or prejudice. He did not show that the State would
19       have been unable to establish probable cause if he had not waived the
         preliminary hearing. *See* NRS 171.206 (providing that a defendant shall be
20       bound over for trial in district court upon a showing a [sic] probable cause
         to believe an offense has been committed by the defendant). And
21       considering the substantial benefit appellant received in the plea agreement
         (avoiding one count of sexual assault of a child under 14 years of age and
22       two counts of lewdness with a child under 14 years of age), he did not
         demonstrate that he would have insisted on going to trial had he known that
23       a witness, who was not in the car at the time of the alleged touching and
         thus may not have even testified at trial, would have advocated for a lenient
24       sentence. Therefore, we conclude that the district court did not err in
         denying this claim.

25

26   (ECF No. 12-11 at 3-4.) The Supreme Court of Nevada's determination is neither contrary

27   to nor constitutes an unreasonable application of federal law as determined by the

28   Supreme Court and is not based on an unreasonable determination of the facts in the

16

1    state court record.

2    Nothing in the record shows counsel was aware of information in either the police

3    reports or Bell's conversations with the prosecutor that could have resulted in dismissal

4    of any of the charges for failure to establish "probable cause to believe that an offense

5    has been committed and that [Daveshwar] has committed it." *See* NRS § 171.206. The

6    record shows that before the guilty plea, Bell told the prosecutor Daveshwar contacted

7    him to apologize. Nothing indicates counsel was aware, at the time of the arraignment,

8    that Bell would later write a letter stating his opinion that Daveshwar should be sentenced

9    to probation. Bell's letter is dated long after Daveshwar waived preliminary hearing and

10   pleaded guilty. Bell's letter does not state L.B.'s accusations are untrue or that Bell was

11   "unsure" or doubted L.B.'s allegations; rather, Bell's letter states Bell could not

12   comprehend Daveshwar's actions. Bell stated the incident would not have occurred had

13   L.B. not snuck out of the house and called Daveshwar for a ride, but such actions provided

14   Daveshwar no defense to the charges. Given the favorable plea offer and the contents of

15   the witness statements, counsel's advice to waive preliminary hearing as part of the guilty

16   plea agreement was objectively reasonable, and there is no reasonable probability the

17   contents of the police report or Bell's statement to the prosecutor would cause Daveshwar

18   to reject the plea offer and proceed with a preliminary hearing or trial.

19   The Supreme Court of Nevada's application of *Strickland* and determination that

20   Daveshwar failed to establish counsel's actions fell outside the wide range of competence

21   demanded of attorneys in criminal cases or resulting prejudice is objectively reasonable.

22   Daveshwar has no entitlement to relief for Ground 2(A).

23       **C.    Ground 3—Lifetime Supervision and Parole**

24   Ground 3 alleges trial counsel was ineffective in advising: (A) the mandatory

25   lifetime supervision requirement would not be enforced; and (B) if he did not "receive any

26   write-ups or have any problems" in the prison, he would "make the board." (ECF No. 7 at

27   12-15; ECF No. 22.) He claims this advice renders his plea unintelligent and involuntary.

28   (*Id.*)

The Supreme Court of Nevada determined Daveshwar failed to establish deficient performance or prejudice under *Strickland*:

> [A]ppellant claimed that counsel downplayed the seriousness of lifetime supervision by insisting that the Division of Parole and Probation was not enforcing lifetime supervision due to a Supreme Court decision. Appellant did not demonstrate deficient performance or prejudice. At the plea canvass, appellant acknowledged that he understood the terms of the plea agreement, which informed him that he was subject to lifetime supervision. He also indicated that he had not received any promises regarding his sentence. Therefore, the district court did not err in denying this claim.

(ECF No. 12-11 at 4.) The Supreme Court of Nevada's determination is neither contrary to nor constitutes an unreasonable application of federal law as determined by the Supreme Court and is not based on an unreasonable determination of the facts in the state court record.

### 1.    Ground 3(A)—Lifetime Supervision

Daveshwar signed a written plea memorandum that unequivocally states he is subject to lifetime supervision under NRS § 176.0931. At Daveshwar's change-of-plea-hearing, Daveshwar stated he understood the terms of the plea agreement and counsel made no promises beyond the terms contained in the plea memorandum. The PIR unequivocally states Daveshwar is subject to lifetime supervision. In Daveshwar's presence at sentencing, counsel stated Daveshwar was fully informed about the lifetime supervision requirement and utilized the mandatory lifetime supervision requirement as justification for imposition of a two-to-five-year sentence, rather than the lengthier sentences recommended by the state and the PIR. Daveshwar addressed the court at sentencing and, despite multiple written notifications of the lifetime supervision requirement and the opportunity to address the court about "anything," did not attempt to clarify or object to the requirement. Regardless of enforcement of the supervision requirement, Daveshwar was fully informed and acknowledged he was subject to the requirement. Moreover, given he received repeated notice of the mandatory lifetime supervision requirement throughout the plea and sentencing proceedings, it was reasonable to conclude Daveshwar failed to establish, but for the alleged erroneous

advice, there was a reasonable probability he would have opted to exercise his right to trial rather than plead guilty.

The Supreme Court of Nevada's application of *Strickland* and determination that Daveshwar failed to establish counsel's actions fell outside the wide range of competence demanded of attorneys in criminal cases or resulting prejudice is objectively reasonable. Daveshwar is not entitled to federal habeas relief for Ground 3(A).

### 2.    Ground 3(B)—Prospects for Release on Parole

Daveshwar fairly presented his claim that counsel was ineffective in advising he would be paroled after four years if he had "no write-ups" or problems in prison; however, the Supreme Court of Nevada did not expressly address it. (ECF Nos. 12-1 at 12-17; ECF No. 12-10 at 7, 20; ECF No. 12-11.) This Court presumes the Supreme Court of Nevada adjudicated the claim on the merits given the absence of any indication or state-law principles to the contrary. *See Johnson v. Williams*, 568 U.S. 289, 298 (2013) (confirming "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary").

The Ninth Circuit Court of Appeals has held "'a defendant is entitled to be informed of the direct consequences of the plea,' although it is not necessary to inform him of 'all possible collateral consequences.'" *United States v. Wills*, 881 F.2d 823, 825 (9th Cir. 1989) (quoting *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988)). "A 'direct consequence' of a plea presents 'a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" *Id.* (quoting *Torrey*, 842 F.2d at 236 (noting direct consequences include a mandatory special parole term, ineligibility for parole, and the maximum punishment provided by law) (citations omitted)). "If the matter is discretionary, it is a collateral consequence." *Id.* (citation omitted). "In many cases, the determination that a particular consequence is 'collateral' has rested on the fact that it was in the hands of another government agency or the defendant himself." *Torrey*, 842 F.2d at 236; *see, e.g., Bargas v. Burns*, 179 F.3d 1207, 1216-17 (9th Cir. 1999) (holding

court's failure to warn Nevada petitioner of a then-existing requirement that parole eligibility was subject to review by a psychiatric panel was a collateral consequence of the petitioner's guilty plea that did not violate due process as the decision whether to grant or deny parole is unknown and was left to the discretion of the psychiatric panel).

The Supreme Court has "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*," and has, thus far, declined to consider whether that distinction is appropriate. *Padilla v. Kentucky,* 559 U.S. 356, 365 (2010). The Supreme Court has moreover left open the question whether incorrect advice about parole eligibility can constitute ineffective assistance of counsel. *See Hill,* 474 U.S. at 58-60 (holding the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel and finding it "unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel."). In *Hill*, the petitioner claimed counsel failed to advise him that as a second offender a state statute required he serve one-half, rather than one-third, of his sentence before he was eligible for parole. *Id.* at 53-55. Without considering whether the requirement was a direct or collateral consequence of the guilty plea, the Supreme Court held the district court did not err in declining to hold a hearing on the claim because the petitioner failed to allege prejudice under *Strickland*, *i.e.*, that petitioner would have insisted on going to trial had counsel advised him of the statutory requirement. *Id.* at 60.

Daveshwar claims advice about release on parole is not a collateral consequence and the reasoning of *Padilla* governs. (ECF No. 22 at 3-4.) In *Padilla*, the Supreme Court held that, despite nearly universal treatment of counsel's advice about deportation consequences as a collateral consequence not subject to Sixth Amendment protections, the Sixth Amendment requires an attorney to advise a criminal defendant about the risk of deportation created by a guilty plea, not on the basis that it is either a direct or collateral consequence of the plea and conviction, but because of "the unique nature of

1   deportation." *Padilla*, 559 U.S. at 364-65; *see also Chaidez v. United States,* 568 U.S.

2   342, 349-57 (2013) (explaining *Hill* "left open whether advice concerning a collateral

3   consequence must satisfy Sixth Amendment requirements" and confirming the decision

4   in *Padilla* was not based on an analysis whether deportation consequences are direct

5   versus collateral consequences).

6         Here, the Supreme Court of Nevada could reasonably conclude counsel's alleged

7   advice concerning Daveshwar's prospects for release on parole concerned a collateral

8   consequence and therefore falls outside the Sixth Amendment. *Torrey*, 842 F.2d at 237

9   ("Failure to advise [a defendant] about a collateral penalty cannot be held to be below an

10  objective standard of reasonableness" where a defendant received the benefit of his

11  bargain.). Daveshwar relies on *O'Tuel v. Osborne*, 706 F.2d 498 (4th Cir. 1983), which

12  held trial counsel was ineffective in advising O'Tuel would be eligible for parole in 10 years

13  if he accepted the state's plea offer, but under state law, O'Tuel would be required to

14  serve 20 years before he was eligible for parole, making it a direct consequence of the

15  plea. (ECF No. 47 at 4.) Unlike in *O'Tuel*, Daveshwar was correctly advised he would be

16  eligible to seek parole in four years, and nothing in the record indicates he was required

17  to serve longer than four years before seeking parole or that he was categorically denied

18  parole after serving four years. Release on parole in Daveshwar's case is entirely

19  discretionary and is based on a number of factors, making it a collateral, rather than a

20  direct, consequence.[8]

21         It is additionally reasonable to conclude Daveshwar failed to establish counsel was

22  ineffective under *Strickland*. *See, e.g.*, *United States v. Keller,* 902 F.2d 1391, 1394-95

23  (9th Cir. 1990) (holding counsel's erroneous alleged prediction defendant would serve no

24  more than 36 months in prison before he was paroled was neither deficient nor prejudicial

25  _____

26         [8]In Nevada, the legislature declared that release on parole "is an act of grace of
    the State." NRS § 213.10705. The decision whether to grant parole is a discretionary
27  decision and there is no right to parole. NRS § 213.1099; *Weakland v. Bd. of Parole
    Comm'rs,* 100 Nev. 218, 219 (1984). The Supreme Court of Nevada has pointed out NRS
28  § 213.1099 "gives rise to a 'hope'" of release on parole, and the Board's discretionary
    decision to deny parole is not subject to the constraints of due process. *Weakland*, 100
    Nev. at 219-20.

as to invalidate his plea). Daveshwar confirmed no one induced him to plead guilty based on any promises apart from the terms of the plea memorandum. The plea memorandum included no promises concerning release on parole. Nothing said during the plea colloquy promised or guaranteed Daveshwar release on parole after successfully serving four years of imprisonment. Daveshwar personally clarified he would be eligible to seek parole in four years if the sentencing court accepted the state's recommended sentence of four to 15 years, but did not seek assurance that, if he received "no write-ups" and had no problems in prison, he would be released on parole after four years. Daveshwar acknowledged at his change-of-plea hearing that the plea agreement entitled the sentencing court to impose a sentence of eight to 20 years imprisonment. Daveshwar was therefore aware that it was possible he would have to wait eight years before he could seek release on parole. Daveshwar also failed to show a reasonable probability he would have chosen to forgo the plea agreement and instead insist on exercising his right to trial had counsel informed him the decision whether to release him on parole would include consideration of his prior sexual offenses. The record shows Daveshwar was on notice before pleading guilty that his prior sexual offenses differentiated his prospects from those without such convictions. Had Daveshwar rejected the plea agreement, there was a reasonable probability he would have continued to face charges for which, if convicted at trial, he would not be eligible to seek parole for 10 or 35 years, making the prospect of seeking release on parole after four years comparatively advantageous.[9]

For the aforementioned reasons, the Supreme Court of Nevada's rejection of this claim is neither contrary to nor constitutes an unreasonable application of federal law as

---

[9]Daveshwar relies on *Esslinger v. Davis*, 44 F.3d 1525 (11th Cir. 1995); however, in that case, counsel advised Esslinger to accept a plea agreement expecting Esslinger to serve 10 years imprisonment unaware that Esslinger had two prior felonies triggering a mandatory 99-year sentence. (ECF No. 47 at 10-11.) Esslinger's counsel incorrectly advised him about mandatory consequences of his guilty plea to the offense and, in that instance, Esslinger received absolutely no benefit from entering into the plea agreement. Thus, counsel was ineffective in advising Esslinger. Here, Daveshwar was advised of the consequences of his guilty plea and benefitted from them.

1    determined by the Supreme Court and is not based on an unreasonable determination of

2    the facts. Accordingly, Daveshwar is not entitled to federal habeas relief for Ground 3.[10]

3    **D.    Ground 4—Prior Sexual Offenses and Motion to Withdraw Guilty Plea**

4          Ground 4(C) alleges trial counsel was ineffective in incorrectly advising Daveshwar

5    his prior convictions for sexually motivated coercion and commission of a sexual act in

6    public were admissible at trial. (ECF No. 7 at 15-20.) Ground 4(D) alleges counsel was

7    ineffective in failing to move to withdraw the guilty plea before sentencing. (*Id.*)

8          The Supreme Court of Nevada determined Daveshwar failed to establish deficient

9    performance or prejudice under *Strickland*:

10         [A]ppellant claimed that counsel should have moved to withdraw his
       guilty plea based on his assertion of his innocence, his counsel's advice to
11       waive the preliminary hearing without letting him review the police report,
       and his counsel's advice that his prior convictions for sexually motivated
12       coercion and commission of a sexual act in public could be used against
       him. Appellant did not demonstrate deficient performance or prejudice as
13       he did not allege that counsel ignored a legitimate basis to withdraw the
       guilty plea before sentencing. "The question of an accused's guilt or
14       innocence is generally not at issue in a motion to withdraw a guilty plea."
       *Hargrove v. State*, 100 Nev. 498, 503, 686 P.2d 222, 226 (1984).
15       Additionally, appellant has not alleged what information contained in the
       police report would have constituted a "fair and just" reason to withdraw his
16       guilty plea. *Stevenson v. State*, 131 Nev. 598, 604, 354 P.3d 1277, 1281
       (2015). Lastly, as counsel's concern that appellant's prior convictions would
17       be admitted was not unfounded, *see Ledbetter v. State*, 122 Nev. 252, 262,

18    ――――――――――
          [10]Daveshwar submitted documents to this Court dated November of 2021 that
19    state he was denied parole. (ECF No. 47 at 42.) Assuming denial of parole is relevant to
      the claim that counsel was ineffective in advising Daveshwar about his prospects for
20    release on parole, Daveshwar did not present the documents to the state courts during
      the state postconviction review proceedings. This is understandable as parole was not
21    yet denied when the Supreme Court of Nevada decided the appeal from the denial of his
      postconviction review petition. Although the document denying parole could be construed
22    as a factual predicate that could not have been previously discovered through the
      exercise of due diligence at the time of the state postconviction review proceedings
23    because parole had not yet been denied, the Court may not consider the document
      because the facts underlying the ineffective assistance of counsel claim would be
24    insufficient to establish by clear and convincing evidence that, but for constitutional error,
      no reasonable factfinder would have found Daveshwar guilty of the underlying offense.
25    28 U.S.C. § 2254(e)(2). The Supreme Court recently reiterated and clarified that a federal
      habeas court may not consider evidence beyond the state-court record unless a petitioner
26    satisfies 28 U.S.C. § 2254(e)(2). *Shinn v. Ramirez,* 142 S. Ct. 1718, 1730, 1737 (2022)
      ("Only rarely may a federal habeas court hear a claim or consider evidence that a prisoner
27    did not previously present to the state courts in compliance with state procedural rules.");
      *see also Pinholster,* 563 U.S. at 180-81 (holding a federal court may review a federal
28    habeas claim based solely on the record that was before the court that adjudicated the
      claim on the merits). Thus, this Court will not consider the parole document (ECF No. 47
      at 42).

129 P.3d 671, 678-79 (2006) (recognizing that uncharged acts of molestation may be admitted to show motive), he did not demonstrate that counsel was ineffective. Therefore, the district court did not err in denying the claim.

(ECF No. 12-11 at 4-5.) The Supreme Court of Nevada's determination is neither contrary to nor constitutes an unreasonable application of federal law as determined by the Supreme Court and is not based on an unreasonable determination of the facts in the state court record.

### 1.    Ground 4(C)—Prior Sexual Offenses

NRS § 48.045(2) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but may be admissible as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Before admission of such evidence, a trial court must conduct a hearing on the record and determine: (1) the evidence is relevant to the crime charged; (2) the other act is proven by clear and convincing evidence; and (3) the probative value of the other act is not substantially outweighed by the danger of unfair prejudice. *Qualls v. State*, 114 Nev. 900, 902 (1998) (citations omitted); *see, e.g.*, *Ledbetter v. State*, 122 Nev. 252, 261-64 n.21 (2006) (holding in a prosecution for sexual assault on a minor that evidence of uncharged prior acts of sexual abuse was admissible to show motive for sexual assault even though trial court failed to provide the requisite limiting instruction on the use of uncharged prior acts of sexual abuse of minors before testimony of each witness who testified about the acts). In 2015, the Nevada Legislature added NRS § 48.045(3), permitting the admission of evidence of prior sexual offenses: "Nothing in this section shall be construed to prohibit the admission of evidence in a criminal prosecution for a sexual offense that a person committed another crime, wrong or act that constitutes a separate sexual offense. As used in that subsection, "'sexual offense' has the meaning ascribed to it in NRS 179D.097." A "sexual offense" includes any "offense that has an element involving a

1   sexual act or sexual conduct with another." NRS § 179D.097(r), *as amended by* Laws

2   2015, c. 287, §  6, eff. Oct. 1, 2015.

3          As the state supreme court noted, counsel could anticipate the state would seek

4   to present evidence at trial of Daveshwar's prior sexual offenses to prove motive.

5   Daveshwar's prior sexual offense for sexually motivated coercion involved his digital

6   penetration of the genitalia of females while he was in a position of trust without their

7   consent while he provided them a service. The offenses at issue shared those qualities.

8   Moreover, the prior offense of commission of a sexual act in public is similar to the sexual

9   conduct toward L.B. in that it occurred in the presence of L.B.'s friends. An objectively

10  reasonable attorney could advise a defendant there was a risk that at trial, the state would

11  be permitted to present evidence of prior sexual offenses under NRS § 48.045(2) for the

12  purpose of establishing motive or as a prior sexual offense under NRS § 48.045(3).[11]

13  Thus, the record supports the Supreme Court of Nevada's application of *Strickland's*

14  performance prong in rejecting the claim that counsel was deficient in advising

15  Daveshwar the state could use his prior sexual assault convictions as evidence against

16  him at trial. Daveshwar has no entitlement to federal habeas relief for Ground 4(C).

17          **2.      Ground 4(D)—Motion to Withdraw the Guilty Plea**

18          A Nevada defendant may withdraw his guilty plea for any "fair and just" reason.

19  *See* NRS § 176.165; *Stevenson v. State*, 131 Nev. 598, 603 (2015) ("The district court

20  must consider the totality of the circumstances to determine whether permitting

21  _____

22          [11]In 2019. the Supreme Court of Nevada held NRS § 48.045(3) "unambiguously
    permits the district court to admit prior sexual bad acts for propensity purposes in a
23  criminal prosecution for a sexual offense." *Franks v. State*, 135 Nev. 1, 4 (2019). In 2022,
    the Supreme Court of Nevada reiterated NRS § 48.045(3) is applicable whenever a
24  criminal defendant is charged with a sexual offense, and clarified that before admitting
    prior sexual bad acts a trial court must determine that: (1) the other sexual offense is
25  relevant to the crime charged; (2) the other offense is proven by a preponderance of the
    evidence; and (3) the probative value of the evidence is not substantially outweighed by
26  the danger of unfair prejudice by considering the factors articulated in *United States v.
    LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001)). *State v. Eighth Jud. Dist. Ct. in & for Cnty.
27  of Clark*, 521 P.3d 1215, 1220-23 (2022). The factors articulated in *LeMay* include: (1) the
    similarity of the prior acts to the acts charged; (2) the closeness in time of the prior acts
28  to the acts charged; (3) the frequency of the prior acts; (4) the presence or lack of
    intervening circumstances; and (5) the necessity of the evidence beyond the testimonies
    already offered at trial. *Id.*

withdrawal of a guilty plea before sentencing would be fair and just."); *see also Brady v. United States*, 397 U.S. 742, 748-49 (1970) (holding the voluntariness of a guilty plea "can be determined only by considering all of the relevant circumstances surrounding it. . . [and] [w]aivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"). Courts should not focus exclusively on whether a defendant knowingly, voluntarily, and intelligently entered a guilty plea. *Stevenson*, 131 Nev. at 603. The question of an accused's guilt or innocence is generally not at issue in a motion to withdraw a guilty plea. *See Kercheval v. United States*, 274 U.S. 220, 224 (1927); *Hargrove v. State*, 100 Nev. 498, 503 (1984); *but cf.*, *Mitchell v. State*, 109 Nev. 137, 141 (1993) (holding it was an abuse of discretion to deny a motion to withdraw a guilty plea given defendant's credible claim of factual innocence). Withdrawal of a guilty plea is more commonly permissible where the record shows a defendant was not informed of the consequences of the plea, such as where, before the entry of the plea, a defendant was not informed probation is not available, *Skinner v. State*, 113 Nev. 49, 51 (1997), or was not informed the sentencing court could consider allegations in connection with dismissed counts at sentencing, *Jezierski v. State*, 107 Nev. 355, 355-56 (1991).

The Supreme Court of Nevada reasonably applied *Strickland* in concluding counsel was not ineffective in failing to move to withdraw the guilty plea based on Daveshwar's allegations of innocence, counsel's advice to waive preliminary hearing, counsel's failure to provide Daveshwar with a copy of the police report, and counsel's advice that the state could use his prior sexual offenses at trial. The record supplies no basis to conclude Daveshwar is innocent considering the witness statements and his repeated admissions of guilt and apologies for committing the offense. Nothing in the record indicates the state could not establish probable cause at a preliminary hearing given the corroborated statement of L.B. Daveshwar failed to establish the contents of the police reports would have demonstrated Daveshwar was factually innocent. As discussed, counsel's advice concerning the admissibility of the prior sexual offenses is

1   objectively reasonable and afforded no fair and just reason to permit withdrawal of the

2   guilty plea. On this record, the state supreme court reasonably concluded counsel's

3   failure to move to withdraw the guilty plea did not fall below an objective standard of

4   reasonableness as Daveshwar was not deprived knowledge of the consequences of his

5   guilty plea and there is no reasonable probability a motion to withdraw the guilty plea

6   would have succeeded on this record. Daveshwar has no entitlement to federal habeas

7   relief for Ground 4(D).

8           **E.    Ground 5—Sentencing**

9           Ground 5 alleges trial counsel provided ineffective assistance at sentencing by:

10  (A) misinforming the sentencing court about the nature and number of Daveshwar's prior

11  convictions; (B) failing to object to improper characterization by the prosecution; (C) failing

12  to object to the psychosexual evaluation as it was rushed; (D) failing to provide a defense

13  expert to perform a psychosexual evaluation; (E) failing to use favorable text messages

14  to challenge the evidence of guilt; and (F) failing to argue L.B.'s father believed probation

15  was an appropriate sentence.[12] (ECF No. 7 at 20-21.)

16          The Supreme Court of Nevada determined Daveshwar failed to establish deficient

17  performance or prejudice under *Strickland*:

18          [A]ppellant claimed that counsel misinformed the court at sentencing
            about the nature and number of his prior convictions, did not object to
19          improper characterization by the State, did not object to the psychosexual
            evaluation as it was rushed, did not provide his own expert, did not use
20          favorable text messages to challenge evidence of guilt, did not argue that
            the victim's father believed that probation was an appropriate sentence, and
21          did not introduce mitigating testimony from relatives. Appellant did not
            demonstrate deficiency or prejudice. The presentence investigation report
22          noted appellant's prior offenses and both counsel for the State and
            appellant described the offenses in their arguments. While the
23          characterizations of those offenses differed in some respects, the record

24          ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
               [12]Daveshwar relies on *Cooper v. Fitzharris*, 551 F.2d 1162 (9th Cir. 1977) for its
25  holding that a prisoner need not show prejudice if counsel's actions were ineffective. (ECF
    No. 47 at 39-40.) The Ninth Circuit reversed that decision on rehearing. *See Cooper v.*
26  *Fitzharris*, 586 F.2d 1325, 1327 (9th Cir. 1978) ("We hold that the Sixth Amendment
    requires that persons accused of crime be afforded reasonably competent and effective
27  representation. We also hold that where, as here, the claim of ineffective assistance is
    founded upon specific acts and omissions of defense counsel at trial, the accused must
28  establish that counsel's errors prejudiced the defense. We conclude that the
    representation afforded appellant in this case satisfied the Sixth Amendment, and
    affirm.").

does not suggest that the sentencing court based its decision on either characterization. *See Rendell v. State,* 109 Nev. 5, 7-8, 846 P.2d 278, 280 (1993) (recognizing sentencing judges' ability to separate the "wheat from the chaff" and determine an appropriate sentence (internal quotation marks omitted)). Despite his claims that the psychosexual evaluation was rushed, appellant does not identify any errors, allege how devoting more time to it would alter the conclusions, or assert what another expert would have concluded had he been subject to another evaluation. *See Hargrove,* 100 Nev. at 502, 686 P.2d at 225. Appellant has not made sufficient allegations to show that the information in the evaluation was impalpable or highly suspect. *See Denson v. State,* 112 Nev. 489, 492, 915 P.2d 284, 286 (1996). As the district court considered the facts related to the offense, even mentioning the text messages, and the letter from the victim's father, appellant did not demonstrate a reasonable probability that further argument would have affected the outcome at sentencing. Lastly, appellant did not allege the content of the mitigation testimony counsel failed to introduce. *See Hargrove,* 100 Nev. at 502, 686 P.2d at 225. Therefore, the district court did not err in denying this claim.

(ECF No. 12-11 at 5-6.) The Supreme Court of Nevada's determination is neither contrary to nor constitutes an unreasonable application of federal law as determined by the Supreme Court and is not based on an unreasonable determination of the facts in the state court record.

### 1.     Grounds 5(A) and 5(B)—Argument About Prior Offenses

A defendant has a constitutional right to a sentence based on accurate information. *Roberts v. United States*, 445 U.S. 552, 556 (1980); *Townsend v. Burke*, 334 U.S. 736, 740 (1948). Where a defendant claims a sentencing court relied on false or unreliable information, he must make a showing of two elements: (1) the challenged evidence is materially false or unreliable; and (2) it actually served as the basis for the sentence. *See U.S. v. Ching*, 682 F.2d 799, 801 (9th Cir. 1982).

At Daveshwar's sentencing hearing, trial counsel stated Daveshwar was provided a copy of the PIR and counsel referred to the PIR's synopsis of the nature and number of Daveshwar's prior convictions. (ECF No. 11-20 at 4-13.) Consistent with the PIR, counsel stated Daveshwar suffered convictions by jury trial on two counts of sexual assault for incidents at Burning Man, the convictions were overturned, and Daveshwar later pleaded guilty to sexually motivated coercion and received an honorable discharge after serving on probation. (*Id.*) Counsel argued, "the facts of [the Burning Man] case are different than

1    the facts in this case." (*Id.*) Counsel acknowledged the court may have concerns as this

2    is Daveshwar's second sexual offense and because the state believes Daveshwar "is

3    preying on people," but argued Daveshwar did not deliberately seek out L.B; rather, L.B.

4    repeatedly texted and called him. (*Id.*)

5          In response to trial counsel's argument, the prosecutor argued:

6          What is also concerning, and counsel touched on it a little bit, is the
     prior conduct. And I would note that the prior conduct for the sexually
7    motivated coercion were two adult victims. It happened at Burning Man in
     Pershing County. He basically went up to—he went to Burning Man, went
8    up to a massage tent and said, *Hey, I'm a masseuse, I'd like to provide free
     massages in your tent.* And so he gave them, what the State believes, kind
9    of a trumped up resume, if you will, about his qualifications in massage
     therapy, and almost immediately, his first client, is like, *Hey, that's not
10   appropriate,* the digital penetration was reported immediately. Another client
     said the same thing, so they called the police and he was prosecuted.
11
           The end result was a remand after the Supreme Court reversed the
12   conviction for sexual assault, so the convictions were sexually motivated
     coercion, and I believe he ended up pleading to one count, but I think the
13   PSI says two felony priors, so I believe it was two.

14         So we have an understanding or at least we hope on his part that,
     hey, you can't digitally penetrate females without their permission; if you do,
15   you get prosecuted. And it's the same behavior. Different facts, certainly
     different type of circumstances in that the victims were adults, but here you
16   also have a victim who is in a vulnerable position. And a person getting a
     massage puts an enormous amount of trust in that person who is
17   massaging them to believe that they're not going to do anything
     inappropriate. And this young girl, [L.B.], regardless of what she may have
18   done, sneaking out, as your Honor has said, that gives weight to a
     justification or a mitigation or an excuse or that she asked for it. We don't
19   say that a man who walks through an alley wearing a Rolex is the one guilty
     for being robbed for that Rolex. We don't do that. We don't put the blame
20   on the victim to mitigate the crime, and we can't let it happen here as well,
     your Honor.

21

22   (*Id.* at 20-21.) Daveshwar addressed the sentencing court about his prior sexual offenses,

23   stating, "As far as previous conduct is concerned, I'm ashamed of that also, you know,

24   what happened at massage place at Burning Man. Even though consent was the crux of

25   that case, but that still is not excusable." (*Id.* at 23.) The sentencing court stated it took

26   into consideration the comments of trial counsel, the prosecutor, and Daveshwar, and

27   told Daveshwar: "Someday you'll get out of prison . . . and you'll have to make a decision

28

                                            29

1   based on your prior record whether this is something you're going to continue with [sic]

2   this type of behavior, it sounds like it's out of control for you." (*Id.* at 26-27.)

3          The Supreme Court of Nevada's application of *Strickland* in determining counsel

4   was not ineffective in his arguments to the sentencing court about the nature and number

5   of Daveshwar's prior convictions and failing to object to the state's characterization of his

6   prior convictions is objectively reasonable. Counsel referred to the PIR, which explained

7   the circumstances of the prior sexual assault convictions, and counsel argued the

8   circumstances of the prior sexual offenses were different than in this case. Daveshwar

9   fails to show in what way counsel mischaracterized the prior offenses. The sentencing

10  court considered that Daveshwar suffered prior sexual offenses but did not expressly rely

11  on trial counsel's characterization of the number or circumstances of the prior sexual

12  offenses. Counsel's failure to object to the prosecutor's characterization of the prior

13  sexual offenses did not fall below an objective standard of reasonableness as the

14  prosecutor's position was not without basis in the state court record for the prior offenses

15  and did not contradict the Supreme Court of Nevada's ruling reversing the prior

16  convictions.[13] It was moreover objectively reasonable for the Supreme Court of Nevada

17  to conclude there was no reasonable probability the result of the proceedings would have

18  been different had counsel objected to the prosecutor's characterizations. The sentencing

19  court took into consideration this was not Daveshwar's first sexual crime but did not

20

21          [13]The Court again takes judicial notice of the pleadings in the online docket records
    of the Supreme Court of Nevada in Case No. 50051, which can be accessed by the public
22  online at 50051: Case View (nvsupremecourt.us).The Court notes that in Daveshwar's
    opening brief, he stated the evidence at trial showed he informed the massage tent at
23  Burning Man that he had "formal training" in massage but no certification. In Respondents'
    answer, they state, "during an interview with Deputies Stahl and Miranda, Mr. Daveshwar
24  confirms that he was not a professional trained therapeutic massage therapist and that
    he had only watched massages at his camp." Given these factual recitations, an
25  objectively reasonable attorney representing Daveshwar in the instant proceedings could
    determine it was futile to object to the state's argument that, "in its view" Daveshwar
26  provided "kind of a trumped up" resume, as the prosecutor's argument stated only an
    opinion about the circumstances involved in the prior offenses, and that has support in
27  the record of the proceedings. Moreover, an objectively reasonable attorney could
    conclude the prosecutor's argument that Daveshwar offered "free" massages was
28  immaterial.

expressly rely upon any facts for the prior sexual offenses, or similarities or dissimilarities between the characterizations of the prior sexual offenses and those of the instant offense, in rendering its sentencing decision. Unlike in *Townsend,* the record warrants no conclusion that Daveshwar "was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." 334 U.S. at 741; *see also U.S. v. Tucker,* 404 U.S. 443, 444-47 (1972) (holding a sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[]" a sentence "at least in part" on it or gives "specific consideration" to the information before imposing sentence.) For the foregoing reasons, Daveshwar is not entitled to federal habeas relief for Grounds 5(A) and 5(B).[14]

### 2.    Grounds 5(C) and 5(D)—Psychosexual Evaluation

According to NRS § 176.139(3), an evaluator "must use *diagnostic tools* that are *generally accepted* as being within the standard of care for the evaluation of sex offenders . . . ." *Blackburn v. State*, 129 Nev. 92, 95-97 (2013) (emphasis in original). However, a clinician may rely on his or her professional opinion in conducting a psychosexual evaluation. *Id.* at 98.

The state court record supports the reasonableness of the Supreme Court of Nevada's determination that counsel's performance was neither deficient nor prejudicial under *Strickland*. Daveshwar failed to identify any errors in the psychosexual evaluation. Moreover, Daveshwar fails to allege how counsel's objection and request for additional time to prepare the evaluation would have changed the evaluation or led to preparation

---

[14]Respondents are unclear on the basis for Daveshwar's claim that counsel was ineffective in failing to object to the state's mischaracterizations at sentencing and posited Daveshwar challenged counsel's failure to object to the prosecutor's argument concerning the statement of the daughter of Daveshwar's girlfriend who introduced Daveshwar to L.B. (ECF No. 38 at 22.) The Court reads Daveshwar's claims, before this Court and the state courts, to allege counsel was ineffective in failing to object to mischaracterizations about his prior convictions. To the extent Daveshwar claims the state mischaracterized the statements of the previously mentioned witness, counsel's failure to object was neither deficient nor prejudicial as the record supports Respondents' claim that Daveshwar personally refuted those arguments by attacking this same witness's credibility after the prosecution made their arguments by highlighting the witness's substance abuse. (ECF No. 11-20 at 23-24.)

of an evaluation that had a reasonable probability of changing the outcome of the proceedings. Daveshwar's stated reasons for obtaining the evaluation, *i.e.*, "to increase his understanding and make changes in his behavior" undermine his contentions that counsel's failure to object to the psychosexual evaluation or obtain a different one from a different expert prejudiced him. Daveshwar likewise fails to demonstrate on what basis an objectively reasonable attorney would have requested a defense expert evaluation, how such an evaluation would have differed from the evaluation that was prepared, or how an evaluation from a defense expert would have led to a more favorable outcome.[15] Accordingly, Daveshwar is not entitled to federal habeas relief for Grounds 5(C) and 5(D).

### 3.    Ground 5(E) and 5(F)—Messages, Bell's Letter, and Mitigation

Daveshwar has not demonstrated counsel's failure to argue Bell's letter at sentencing was deficient or prejudicial. The record shows the sentencing court reviewed Bell's letter in which Bell stated his belief that probation was an adequate sentence. The parties, however, had negotiated for prison time instead of probation. Daveshwar has not established counsel's failure to argue favorable text messages at sentencing was deficient or prejudicial. As discussed in Ground 1, an objectively reasonable criminal defense attorney could conclude the 100 text messages between 52-year-old Daveshwar and 13-year-old L.B., in which she demanded cigarettes and nicotine, threatened him, and considered prostitution, provided no defense. An objectively reasonable attorney could expect introduction of favorable text messages would be undermined by the state's argument that the messages supported the state's argument that Daveshwar was "grooming" L.B. for sexual abuse. When trial counsel argued L.B. and her friends

---

[15]Daveshwar cites to *Dando v. Yukins*, 461 F.3d 791 (6th Cir. 2006) for his claim that trial counsel was ineffective in failing to obtain a psychosexual evaluation from a defense expert for sentencing. (ECF No. 47 at 38-39.) In *Dando*, trial counsel inadequately investigated the availability of a duress defense and the related possibility that Dando suffered from Battered Women's Syndrome as counsel was on notice Dando suffered a long history of violent sexual and physical abuse. *Yukins*, 461 F.3d at 798-99. Unlike in *Dando*, Daveshwar fails to state what information would have been included in an evaluation by a defense expert or how there is a reasonable probability the proceedings in his case would have been different had counsel obtained a psychosexual evaluation from a different expert.

1  repeatedly called and texted Daveshwar for a ride and Daveshwar initially refused to pick

2  them up, the sentencing court responded that the calls and messages between

3  Daveshwar and L.B. were "meaningless" as they did not give him permission to "sexually

4  molest" L.B. Daveshwar failed to demonstrate what mitigation evidence counsel should

5  have submitted or a reasonable probability the result of the proceedings would have been

6  different had counsel done so. The Supreme Court of Nevada's application of *Strickland*

7  in rejecting the claim that counsel was ineffective in failing to use favorable text messages,

8  failing to use Bell's letter, and failing to submit mitigation evidence is objectively

9  reasonable. Daveshwar is not entitled to federal habeas relief on Grounds 5(E) and 5(F).

10        **F.**      **Ground 6—Conflict of Interest**

11        Ground 6 alleges trial counsel provided ineffective assistance in violation of the

12  Sixth and Fourteenth Amendments by failing to investigate conflicts of interest. (ECF No.

13  7 at 22-23.)

14        The Supreme Court of Nevada determined Daveshwar failed to establish deficient

15  performance or prejudice under *Strickland*:

16        [A]ppellant claimed that counsel should have moved for a
continuance so that he could be sentenced by a judge who was more

17  familiar with his case and with whom he did not have a possible conflict of
interest. Appellant did not demonstrate deficient performance or prejudice.

18  Appellant did not identify how further familiarity with the case might result in
a lesser sentence where the sentencing judge considered the arguments of

19  counsel, facts of the case as presented by the parties and reflected in the
presentence investigation report, and the psychosexual evaluation.

20  Additionally, neither his pleadings, nor the record, indicate that appellant
informed trial counsel that 14 years before the sentencing hearing appellant

21  hired the sentencing judge's former law firm to represent his uncle. Further,
the fact that the judge's former firm represented appellant's uncle years

22  before in an unrelated controversy is not sufficient to raise an objectively
reasonable question about his impartiality. *See* NCJC Canon 2.11(A).

23  Therefore, the district court did not err in denying this claim.

24  (ECF No. 12-11 at 6-7.) The Supreme Court of Nevada's determination is neither contrary

25  to nor constitutes an unreasonable application of *Strickland* and is not based on an

26  unreasonable determination of the facts in the state court record.

27        It is objectively reasonable to conclude on this record that counsel's failure to

28  request a judge who was more familiar with the case was neither deficient nor prejudicial.

The judge acknowledged review of all documents and letters presented to the court for that proceeding. The judge listened to arguments of trial counsel and provided Daveshwar with at least two opportunities to tell the court "anything" before pronouncement of sentence. Daveshwar fails to establish the judge was not adequately familiar with his case such that counsel's failure to request a different judge was unreasonable.

It is objectively reasonable to conclude on this record that counsel's failure to request recusal of the judge based on an alleged conflict of interest was neither deficient nor prejudicial. Daveshwar admits that at the time of trial counsel's representation, counsel was unaware that Daveshwar had hired the judge's prior law firm 14 years earlier to represent Daveshwar's uncle in an unspecified legal matter. As counsel was unaware of the circumstances, counsel was not deficient in failing to investigate as counsel was not presented with a reasonable basis to do so. Daveshwar's allegations indicate neither the judge nor the judge's prior law firm represented him in any previous legal matters, and the record shows neither the judge nor the judge's prior law firm was a party or witness to Daveshwar's criminal case. Thus, there is no colorable conflict of interest and no reasonable probability the result of the proceedings would have been different had counsel objected and requested recusal of the judge based on the alleged conflict of interest. The supreme court's application of *Strickland* is objectively reasonable and Daveshwar is not entitled to federal habeas relief for Ground 6.

## V.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Daveshwar. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a COA. This Court therefore has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this standard, a certificate of appealability is not warranted for

34

Grounds 1, 2(A), 3, 4(C), 4(D), 5, and 6 as reasonable jurists would not find the Court's assessment debatable or wrong. *See Slack,* 529 U.S. at 484. A COA is also denied for all other grounds as jurists of reason would not find it debatable or wrong whether the Court is correct in its procedural ruling dismissing grounds 2(B), 2(C), 4(A), 4(B), and 4(E) as unexhausted for the reasons stated in the Court's prior order (ECF No. 28).

## VI.    CONCLUSION

It is therefore ordered that the Petition (ECF Nos. 7, 22) is denied with prejudice.

It is further ordered that a certificate of appealability is denied as to all grounds.

It is further ordered that all requests for an evidentiary hearing are denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 2nd Day of May 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE